UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
------------------------------X

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.: 3:02-CR-00306-SRU-ALL |
| Plaintiff, | NOTICE OF MOTION TO TERMINATE SUPERVISED RELEASE PURSUANT TO 18 U.S.C.A.§3583(e) |
| -vs.- | |
| ALFRED YAZBAK, | |
| Defendant. | |

------------------------------X

**PLEASE TAKE NOTICE** that upon the annexed affirmation of David M. Richman, Esq., dated February 27, 2006, and the exhibits annexed thereto, the undersigned will move this Court before the Honorable Stefan Underhill in the United States District Court for the District of Connecticut, 915 Lafayette Boulevard, Bridgeport, Connecticut 06604, at a date and time to be ordered by the Court, for an order terminating the defendant's remaining period of supervised release; and for such other relief as the Court may deem appropriate.

Dated:  New York, New York
        February 28, 2006

                                THE DEFENDANT,
                                By: _____
                                DAVID M. RICHMAN, ESQ. (DR4960)
                                360 Lexington Avenue
                                New York, New York 10017
                                Tele: (212) 687-1425
                                Fax:  (212) 682-6425
                                E-Mail: DRichman@Sonnrichlaw.com

TO:  CLERK
     UNITED STATES DISTRICT COURT
     DISTRICT OF CONNECTICUT

     KEVIN J. O'CONNOR, ESQ., U.S. ATTORNEY
     UNITED STATES ATTORNEY'S OFFICE
     DISTRICT OF CONNECTICUT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
------------------------------------X

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.: 3:02-CR-00306-SRU-ALL |
| Plaintiff, | AFFIRMATION IN SUPPORT |
| -vs.- | OF MOTION TO TERMINATE SUPERVISED RELEASE |
| ALFRED YAZBAK, | PURSUANT TO 18 U.S.C.A.§3583(e) |
| Defendant. | |

------------------------------------X

**DAVID M. RICHMAN**, an attorney duly admitted to practice law in the State of New York and the Southern District and Eastern District of New York, and admitted to this Court *pro hac vice*, affirms the following under the penalties of perjury:

1. I have represented the movant, Alfred Yazbak ("Mr. Yazbak"), since the inception of this matter and, as such, I am fully familiar with the facts and circumstances that give rise to this motion in which Mr. Yazbak seeks to terminate his term of supervised release pursuant to the requirements and authority set forth in 18 U.S.C.A. §3583(e) which, *inter alia*, empowers this Court to act on this motion and discharge a defendant "...at any time after the expiration of one year of supervised release...." Mr. Yazbak has served more than one year of supervised release.

**THE BACKGROUND AND**
**HISTORY OF THIS MATTER**

2. Since Mr. Yazbak pled guilty in the United States District Court for the Greenbelt Division of Maryland to a "conspiracy" count alleging, *inter alia*, a violation of "the Lacey Act" (16

U.S.C. §§ 3371, *et. seq.*) and, moreover, since this Court is unfamiliar with the background of this case, the following is set forth to inform the Court of the background and history of this case:

(a) The crimes in this case were "charged" in a 4-count criminal information prepared by the United States Attorney's Office for the District of Maryland (Greenbelt Division) arising from Mr. Yazbak's wholesale caviar business. After a proffer session and plea "negotiations," Mr. Yazbak pled guilty before the Hon. Alexander Williams, Jr., U.S.D.J. (Maryland-Greenbelt Div.) on June 20, 2001, pursuant to an agreement with the "government" in which Mr. Yazbak was to receive a sentence not to exceed twenty-four months.

(b) Part of the plea negotiations required Mr. Yazbak to agree, *inter alia*, to pay the government the sum of $50,000 on a joint and several basis with his caviar company, Connoisseur Brands, Ltd. ("CBL"), a New York corporation. Approximately 50% of the $50,000 was considered "restitution" (to the government) while the other 50% constituted a "fine" to be paid to the U.S. Fish & Wildlife Service's "Lacey Act Reward Fund." This money has been paid.

(c) The plea agreement required the "parties" to agree to a "Joint Factual Statement" which stated, in essence, that Mr. Yazbak, as CBL's President, purchased (i) caviar from two suppliers accused of smuggling caviar into the United States, and (ii) that some of the caviar purchased by CBL was produced domestically but was sold by CBL as "Russian" caviar.

(d) Sometime in March, 2000, Mr. Yazbak purchased about 860 pounds of domestic paddlefish roe from a "John Walton," a U.S. Fish & Wildlife Service ("USF&W")

undercover operator, after being told by Walton that the paddlefish roe was "farmed" illegally.[1] While executing a search warrant in CBL's Manhattan premises, USF&W agents discovered the 860 pounds of paddlefish roe.

(e) Mr. Yazbak initially denied to agents of the USF&W that he knew of the activities of his suppliers. During his proffer session at the U.S. Attorney's Office in Maryland Mr. Yazbak admitted that his initial statements to USF&W agents regarding the origin of the caviar were untruthful. Mr. Yazbak's proffer sessions resulted in he and the government reaching the heretofore mentioned plea "deal." At the hearing in which he entered his guilty plea - before U.S. District Judge Alexander Williams, on June 20, 2001, Mr. Yazbak conceded the accuracy of the Joint Factual Statement thereby demonstrating his acceptance of personal responsibility for his conduct.

(f) Following the entry of his plea and his meeting with Probation, Probation's PSR noted that Mr. Yazbak's crime resulted in an "Offense Level Computation" of 18 which, due to his Category II level of Criminal History, produced a guideline range between 30 and 37 months.

(g) The government, nevertheless, adhered to its plea agreement (to a reduced sentence of twenty-four months). On January 30, 2002, Mr. Yazbak received a 24-month sentence from Judge Williams, and was allowed to report to the Federal Correctional Institution at Fort Devens, Massachusetts, on July 1, 2002 (**Exhibit A**). He did! He served nineteen months of this sentence until he was released from Fort Devens on January 21, 2004. He was ordered

---

[1] The basis for this sting operation arose from a representation by Walton that the "illegality" of the paddlefish roe had to do with the fish being farmed in excess of the quota imposed in the state where the fish was farmed.

3

to a "half-way house" until he completed his sentence. He was "released" from his "half-way house" confinement on March 26, 2004 and began to serve his 3-year term of supervised release following his release.

## MR. YAZBAK'S PERSONAL HISTORY

3.    Mr. Yazbak was born in Boston on May 13, 1954. He is the youngest of three children. His parents were Lebanese immigrants. His father was a retired U.S. Navy shipyard worker. His mother passed away in 1968. His father passed away on January 1, 2002. Mr. Yazbak has two sisters, Josepha Jowdy (age 52) and Teresa Saltzman (age 57), both of whom reside in Massachusetts.

4.    Mr. Yazbak was married to Amy Yazbak (nee, Hannon), age 49, from June 11, 1983 until September, 2000. They had four children, Katherine, now 21 ; Peter, now 20; Alfred, now 15; and Nicholas, now 13 . They were separated in 1998 and divorced in Connecticut on September 11, 2000.

5.    Although Mr. Yazbak and his former wife were awarded "joint" custody of the children, the children, for all practical purposes, have resided primarily with Mr. Yazbak during these past two years.

6.    Mr. Yazbak presently lives at 930 Oldfield Road, Fairfield, Connecticut 06825. Prior to moving to Connecticut he resided in Boston.

**MR. YAZBAK IS ELIGIBLE FOR
AND DESERVING OF THE RELIEF
SOUGHT BY THIS MOTION, NAMELY,
THE TERMINATION OF HIS SUPERVISED
RELEASE ACCORDING TO THE STATUTORY
CRITERIA SET FORTH IN 18 U.S.C.A. §3583(e)** [2]

7.   Mr. Yazbak is eligible for the relief sought. He has served more than the one year requirement and, as set forth, he has also fulfilled the "conduct" and "interests of justice" requirements of the statute.

8.   Since I have not personally supervised Mr. Yazbak during these past two years, I opted to speak to his Probation Officer at the United States Probation Service - Ms. Jane Cofone - who told me neither she nor the Probation Department had any "objection" to Mr. Yazbak seeking to terminate the remaining term of his "supervised release" program. Ms. Cofone not only reviewed with me some of Mr. Yazbak's actions during this recent two-year period, she shared her knowledge of how Mr. Yazbak dealt with his life (business and family) following his release from incarceration at Fort Devens.

9.   Ms. Cofone learned that upon his release from Fort Devens Mr. Yazbak had no business to return to. Complicating his life was the fact that he had four children to raise - children who, as teenagers, had to deal with the anxiety of re-establishing their relationship with their now

---

[2]   18 U.S.C.A. §(e) sets forth, in pertinent part, the statutory criteria that provides the Court with the discretion to terminate a term of supervised release. In short, "[T]he court may, after considering the factors set forth in Section 3553(a)(1), (a)(2)(B), (a)(2)©, (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), terminate...supervised release at any time after the expiration of one year and discharge...(a)...defendant if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice."

5

released father who sought to re-establish his role as a parent in their lives.

10. Ms. Cofone was aware of how Mr. Yazbak went about trying to re-establish contacts with both his friends and former business acquaintances. She learned that his friends provided Mr. Yazbak with the financial backing to enable him to open up a new business, and she learned that his former "customers" agreed to continue to buy from him those products they were buying during the years prior to his involvement in this matter. In short, Ms. Cofone had a front-row seat at Mr. Yazbak's efforts to get back on his "business" feet. She saw how - due to the trust his friends and customers placed in him - he was able to overcome the initial problems of a start-up business. This is not to say - or imply - that Mr. Yazbak's business is now back to the place it was before he reported to Fort Devens on July 1, 2002. The important point, I believe, is that Mr. Yazbak - his problems in the caviar industry to the contrary notwithstanding - has demonstrated to those who entrusted their faith in him that they were right. His ability to get this start-up business off the ground seems to be paying off.

11. Given his initial efforts in starting up his new business venture - together with the overwhelming complications of raising four children - Ms. Cofone has indicated that Mr. Yazbak's "exemplary" behavior merits Probation's support.

12. Having the opportunity to supervise and observe Mr. Yazbak during these past two years, she reached the conclusion that he has been in complete compliance with the conditions of his supervised release and has done so in a manner that merits this Court's positive consideration of the application.

13. Ms. Cofone has also been in a position to observe Mr. Yazbak re-establish his

relationship with his children. As their primary parent, Mr. Yazbak not only had to try to deal with his children's anxieties and other typical teenage problems that manifested themselves during his incarceration, he has, following his release, managed to deal successfully with the children's particular problems and has managed to get them "back on track." His unfortunate experience in this case, and the manner in which he has confronted the consequences, has helped teach them how to deal with adversity.

14. The children seem to have improved their school work and have begun to deal with the scars that result from these types of ordeals.

15. However, the task of managing the lives of four children together with starting up a new business - both on a "24/7" basis - takes its toll. The complications created by Mr. Yazbak's need to be "supervised" on a regular basis preclude him from experiencing the freedom to deal with his business and family problems. Some of these problems are caused by his need to comply with the conditions of release and check in with his probation officer when he must travel for business. Mr. Yazbak's business - he deals in imported and domestic fish and fish products - often requires him to travel either to the west coast of the United States or overseas, as many of the products he must buy oftentimes require him to board the "next plane" to take advantage of market opportunities. In essence, his is a dynamic and oftentimes rapidly changing business that requires prompt responses.

16. Unfortunately, the volatility of these situations frequently requires a prompt need to travel. Probation believes that Mr. Yazbak's behavior following his release has earned him the right to seek relief from this Court and that he be terminated from the responsibilities of a supervised release program. Hopefully, this will enhance his ability to earn a living and be able to support the

financial and educational needs of his children.

17. I submit that a review of his record while he has been on release should enable the Court to justifiably conclude that Mr. Yazbak has complied fully with the conditions of his release imposed by Judge Williams (**Exhibit A**). He has also met the criteria of Section 3583(e) and that, therefore, objective evaluation of this request for relief will support the Court's finding that he is eligible for the benefits of an Order terminating his release from probation. He fully and clearly fits the profile of somebody entitled to the relief.

18. If the Court has any doubt, I am confident that if it were to order Mr. Yazbak to appear for a "hearing" with respect to this application, it will see what kind of man he is and will conclude that his application merits a positive response.

19. No prior application for the relief requested herein has been made.

Dated: New York, New York
February 27, 2006

_____
DAVID M. RICHMAN, ESQ.

8